UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARKUS J. H.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. 2:23-CV-1004-DWC

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of Defendant's decision terminating Plaintiff's disability insurance benefits (DIB) and finding Plaintiff received an overpayment of benefits. Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 3. After considering the record, the Court concludes the matter must be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

# I. FACTUAL AND PROCEDURAL HISTORY

In March 2016, Plaintiff's application for Disability Insurance Benefits (DIB) was accepted after Commissioner found Plaintiff had been disabled since August 1, 2013. *See* Administrative Record (AR) 15, 43–54. Plaintiff began receiving DIB payments on April 28, 2016. AR 14. Beginning in December 2015, Plaintiff worked as a caretaker for his disabled adult daughter. AR 274, 277. He received pay for this work from December 2015 through at least April 30, 2019. AR 15.

In February 2019, Commissioner informed Plaintiff he was ineligible to receive DIB because of his earnings from his work as a caretaker. AR 14. According to Commissioner, Plaintiff became ineligible to receive benefits beginning January 1, 2017, the date his trial work period ended, and had been overpaid for benefits since that date. AR 14, 85–87. Plaintiff's request for reconsideration was denied. AR 90–92.

A telephonic hearing in which Plaintiff was represented by an attorney was held before an Administrative Law Judge (ALJ) in February 2022. AR 11–21. On March 25, 2022, the ALJ issued a decision finding that Plaintiff was ineligible for benefits beginning January 1, 2017. AR 11–21. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency action subject to judicial review. *See* AR 1–6. Plaintiff filed a complaint in this Court on July 6, 2023. Dkt. 1.

# II. STANDARD

The Court may reverse Commissioner's decision if and only if it is not supported by substantial evidence or it does not reflect the correct legal standards. *Keyes v. Sullivan*, 894 F.2d 1053, 1055 (citing *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)).

## III. DISCUSSION

A claimant is ineligible to receive DIB while he is performing substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1571. Substantial gainful activity is work which is both substantial in that it "involves doing significant physical or mental activities" and is gainful in that it is done "for pay or profit." 20 C.F.R. § 404.1572. "[T]here is a presumption of substantial gainful activity if the applicant earns over [an] amount specified in the guidelines." *Keyes*, 894 F.2d at 1056. But "[t]he mere existence of earnings over the statutory minimum is not dispositive." *Id.*

Plaintiff challenges the ALJ's determination that he performed substantial gainful activity while working as his daughter's caregiver. He does not dispute that the amount he earned from working as a caregiver exceeded the threshold amount required to presumptively show substantial gainful activity. *See* Dkt. 7. Rather, he argues that this presumption was rebutted because the work was performed under "special conditions." *See id.*

If work is "done under special conditions that take into account [the claimant's] impairment," then the Commissioner "may find that it does not show that [he has] the ability to do SGA." 20 C.F.R. § 404.1573(c). [1] The regulations list several examples of "special conditions." *Id.* These include situations in which the claimant "required and received special assistance from other employees," *id.* § 404.1573(c)(1), was "allowed to work irregular hours," *id.* § 404.1573(c)(2), or was "permitted to work at a lower standard of productivity or efficiency," § 404.1573(c)(5). Relevant to this case, another situation involving a special

---

[1] That work was done under special conditions may also "show that [a claimant has] the necessary skills and ability to work at the [SGA] level." 20 C.F.R. § 404.1573(c). But, here, the ALJ did not make a finding that this was the case, and the Court "may not uphold an agency's decision on a ground not actually relied on by the agency." *Molina v. Astrue*, 674 F.3d 1104, 1121 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

condition is one in which the claimant "[was] given the opportunity to work despite [his] impairment because of [a] family relationship." *Id.* § 404.1573(c)(6).

Generally, special conditions might show that the work which is performed was not substantial because it did not include substantial physical or mental activities. *See Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 750–51 (6th Cir. 2018). Special conditions can demonstrate that the true value of a claimant's work is less than what they are being paid, justifying an adjustment of the claimant's earnings for the purposes of determining whether he performed substantial gainful employment. *See* 20 C.F.R. §§ 404.1574, 1576; *see also Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 747 (6th Cir. 2018). But some special conditions, like the family relationship special condition, are "difficult, if not impossible, to quantify in a subsidy analysis." *Cardew*, 896 F.3d at 747. As the regulations suggest, sometimes a special condition means the work experience "does not show that [the claimant has] the ability to do substantial gainful activity," 20 C.F.R. § 404.1573(c), notwithstanding whether the special condition justifies an adjustment in the claimant's earnings from the activity.

Plaintiff argues that he was given the caretaking position because of his relationship with his daughter, and therefore that his work falls under the enumerated example of a special condition in which the work opportunity came from a family relationship. Dkt. 7 at 6–7. The ALJ rejected this contention because "'special conditions' refers to conditions that are 'provided by an employer and/or organization other than an individual's employer.' The special relationship the claimant has to his daughter comes from his familial ties, and not from the state or any associated entity." AR 17.

The ALJ's analysis rested on two faulty premises: that special conditions must be provided by an employer or an organization and that Plaintiff's sole employer was the state.

A special condition need not come from only an employer or an organization. The regulations governing special conditions contain no such distinction. *See* 20 C.F.R. § 404.1543(c). Granted, in many situations involving special conditions, the condition can only be granted by an employer—only an employer can allow a claimant "to work irregular hours," *id.* § 404.1543(c)(2), or "permit[] [him] work at a lower standard of productivity," *id.* § 404.1543(c)(5). But other special conditions do not necessarily involve the use of an employer or organization, and the regulations do not specify that this is a requirement. For instance, a special condition is present is when an individual is "able to work only because of specially arranged circumstances, for example, other persons helped [him] prepare for or get to and from [his] work." *Id.* § 404.1573(c)(4). The regulations do not suggest that the person who helped the claimant get to and from his work needs to be an employer or an organization.

Nor would that distinction make sense. Special conditions are significant in the substantial gainful activity analysis because they show that work performed may not have involved the significant mental or physical activities required for substantial activity. *See Cardew*, 896 F.3d at 750–51. It makes no difference to this analysis whether the special condition was provided by an individual, an organization, or an employer. For instance, Commissioner acknowledges that a special condition is present when a State Vocational Rehabilitation Agency pays for a job coach for an individual. *See* POMS DI 10505.010(A)(4)) (example B). For the purposes of determining whether an individual performed substantial activity, there is no difference between this situation and the situation in which a job coach is provided not by an organization but by an individual.

Indeed, such a distinction would make particularly little sense in the context of a family relationship special condition. Consider two situations: in the first, an individual gets a job at a

1    company owned by her family despite her impairments; in the second, the individual gets a job at
2    a company despite her impairments because her family has connections with the owner of the
3    company. Under the ALJ's rationale, in the second situation, there would be no special condition
4    because the special relationship would "come[] from [her] familial ties," but this would not apply
5    to the first individual. AR 17. But there is no reason why these two individuals should not be
6    treated similarly in determining whether they performed substantial gainful employment.

7         The ALJ's assumption that special conditions must be provided by an employer or an
8    organization comes from a section heading in the SSA's Program Operations Manual System.
9    That heading introduces a subsection on the role of special conditions in adjusting earnings as
10   follows: "special conditions provided by employers and/or organizations other than the
11   individual's employer." POMS DI 10505.010(A)(4).

12        An agency manual like POMS has no binding legal effect but "is 'entitled to respect' . . .
13   to the extent that it has the 'power to persuade.'" *Clark v. Astrue*, 529 F.3d 1211, 1216 (9th Cir.
14   2008) (citations omitted). Here, the agency manual does not purport to offer an interpretation of
15   the regulation. It does not purport to cover the entirety of situations involving special conditions,
16   as it only pertains to those special conditions justifying an adjustment in earnings. Under these
17   circumstances, the Court does not find that the agency manual offers an interpretation that is
18   entitled to deference. *See Barboza v. Cal. Ass'n of Pro. Firefighters*, 799 F.3d 1257, 1267 (9th
19   Cir. 2015) (finding interpretation "lacks any persuasive power" where it "does not provide clear
20   guidance").

21        Even if the employer-or-organization interpretation had merit, however, the ALJ's
22   analysis suffers from an additional issue: it is not the case that Plaintiff was only employed by
23   the state. The State of Washington provides personal care services to clients requiring assistance
24

with daily living activities which can involve the use of an Individual Provider (IP) to provide assistance to clients. *See generally Carter v. Gregoire*, 672 F. Supp. 2d 1146, 1152–53 (W.D. Wash 2009). Plaintiff was hired to care for his daughter through this program. Plaintiff and his wife serve as Plaintiff's legal guardians and representatives. AR 336; Dkt. 10 at 6.

The state regulations in effect at the time Plaintiff served as an IP to his daughter shed light on the relationship between the state, the client, the client's representatives, and the IP. Under those regulations, "the client or representative . . . establishes an employer/employee relationship with the [IP]." WAC 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(2) (repealed 2022). The client or their representative "has the primary responsibility for locating, screening, hiring, supervising, and terminating an individual provider." WAC 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(1) (repealed 2022). "An [IP] must" also "take direction from the client" and "accommodate the client's individual preferences and unique needs." WAC 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 (repealed 2022).

Commissioner's POMS manual does not define "employer" in the context of special conditions. Elsewhere, it defines employer as "the entity with the final authority to: hire, fire, supervise, and control the individual as he or she performs services, or has the right to do so." POMS RS 02101.700(B). The client or representative meets these criteria: she has the power to hire, supervise, and terminate the IP, and the IP is to take direction from the client.

Additionally, it would make little sense if the individual who had the power to hire, terminate, and supervise an employee was not also an employer or supervisor capable of creating a special condition for employment. After all, many of the listed examples of special conditions involve functions that are traditionally done by someone with those powers: someone without the power to hire, terminate, or supervise a worker typically cannot allow them to "work irregular hours," "work at a lower standard of productivity," or assign work "especially suited to [his]

1  impairment." 20 C.F.R. § 404.1543(c). Because the client or representative serve these functions,
2  it follows that they are an employer of the IP for the purpose of being able to create a special
3  condition.

4        This conclusion is confirmed by principles of employment law. The relationship between
5  an IP and a client or representative has the quintessential markers of an employee-employer
6  relationship: the IP acts "to serve [the client's] interests" by accommodating her preferences and
7  needs, the client "consents to receive [the IP's] services" by hiring him and retaining the ability
8  to terminate him, and the client "controls the manner and means by which [the IP] renders
9  services" by supervising and giving direction to him. *See* Restatement of Employment Law §
10 1.01(a).

11       Defendant argues that the state is Plaintiff's employer for two reasons: he is paid by the
12 state and he signed a service contract with the state. Dkt. 10 at 6. This does not show that the
13 state is the exclusive employer of Plaintiff. At best, it shows that the state assumed some of the
14 duties and responsibilities of an employer, not that Plaintiff's daughter or wife were not
15 employers. But Defendant cites no authority which shows that either sign is suggestive of an
16 employment relationship. *See id.* Moreover, the state understood the IP and the client to have an
17 "employer/employee relationship." WAC 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(2) (repealed 2022). This, at the very
18 least, demonstrates that the state understood itself as not being Plaintiff's sole employer despite
19 the contract it signed with Plaintiff and the payments it made to Plaintiff.

20       Because the ALJ failed to adequately consider whether Plaintiff's employment was
21 performed under special conditions, the case must be remanded for the ALJ to do so. Plaintiff
22 also raises an argument with respect to the ALJ's evaluation of his testimony about receiving
23 assistance from his wife. Dkt. 7 at 7–8. The Court need not consider this argument. Rather,
24

because the ALJ's analysis on that issue rested on the assumption that Plaintiff's sole employer was the state, the Court directs that the ALJ reconsider both whether Plaintiff's employment was performed under special conditions and whether it was subsidized on remand.

## IV. CONCLUSION

For the foregoing reasons, the Court **REVERSES** and **REMANDS** the decision pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Order.

Dated this 9th day of April, 2024.

David W. Christel
Chief United States Magistrate Judge